```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                Civil No. 11-2328(DSD/AJB)
```

Connie L. Gretsch, on behalf
of herself and others similarly
situated,

       Plaintiff,

v.                                               **ORDER**

Vantium Capital, Inc., doing
business as Acqura Loan Services,

       Defendant.

    Richard J. Fuller, Esq., Randall Smith, Esq., Bert Black, Esq. and Schaefer Law Firm, 400 South Fourth Street, Suite 202, Minneapolis, MN 55415, counsel for plaintiff.

    Sonya R. Braunschweig, Esq., Robert J. Pratte, Esq and Fulbright & Jaworski, LLP, 80 South Eighth Street, 2100 IDS Center, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion to remand by plaintiff Connie L. Gretsch and the motion to dismiss by defendant Vantium Capital, Inc., doing business as Acqura Loan Services (Acqura). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion to remand.

**BACKGROUND**

This mortgage-loan dispute arises out of a promissory note (Note) and mortgage executed on September 28, 2006, between nonparty Aegis Lending Corporation and Gretsch. See Compl. ¶ 38.

The mortgage was assigned to nonparty Pacifica L. Nineteen, LLC (Pacifica), and nonparty CitiMortgage was retained to service the mortgage. See id.

Beginning in early 2009, financial hardship caused Gretsch to fall behind on her Note payments. Id. ¶ 39. On March 28, 2009, CitiMortgage, on behalf of Pacifica, agreed to an extension agreement (2009 Extension) that capitalized all overdue payments and reduced monthly payments to $615.[1] See id.; Braunschweig Aff. Ex. 2, ECF No. 9. Gretsch made payments under the 2009 Extension until receiving notice on April 6, 2010, that she was being granted a similar modification under the Home Affordable Unemployment Program (UP Program). See Braunschweig Aff. Ex. 3, ECF No. 9. The UP Program required Gretsch to make monthly payments of $300, retroactive to April 1, 2010. See Compl. ¶ 40. Gretsch did not make her first payment until May 2010, alleging she was instructed to do so by a CitiMortgage representative. Id. Gretsch made payments from May 7, 2010 through July 2010. Id.

On May 13, 2010, CitiMortgage transferred the servicing rights on Gretsch's Note to Acqura. Id. ¶ 38. Acqura notified Gretsch that she was in default and that it would no longer accept payments. Id. ¶ 42. In November 2010, Gretsch's unemployment benefits ended, making her ineligible for the UP Program. Id. On the basis of income from an unidentified source, Gretsch sought a

---

[1] This extension was not a HAMP loan modification.

loan modification pursuant to the Home Affordable Modification Program (HAMP), but Acqura denied her request. Id. ¶ 43. On December 8, 2010, Acqura commenced foreclosure proceedings. Id. ¶ 44. Gretsch claims these proceedings were contrary to law, because Acqura failed to perform a pre-foreclosure HAMP eligibility screening, offer a HAMP loan modification or provide notice of HAMP eligibility. See id. ¶ 45.

Gretsch filed this action in Minnesota state court on July 14, 2011, seeking a declaration that Acqura acted negligently, breached the covenant of good faith and fair dealing and violated Minnesota Statutes § 58.13 when it referred Gretsch's mortgage for foreclosure. On August 12, 2011, Acqura timely removed, and moves to dismiss. Gretsch moves to remand. The court now considers the motions.

## DISCUSSION

Federal courts are courts of limited jurisdiction, and subject-matter jurisdiction is a threshold inquiry for all actions in federal court. See Thomas v. Basham, 931 F.2d 521, 522 (8th Cir. 1991); see also Fed R. Civ. P. 12(h)(3). A plaintiff may move to remand if "it appears that the district court lacks subject matter jurisdiction" at any time before entry of final judgment. 28 U.S.C. § 1447(c). The court "resolve[s] all doubts about federal jurisdiction in favor of remand." Transit Cas. Co. v. Certain Underwriters at Lloyd's of London, 119 F.3d 619, 625 (8th

Cir. 1997). For the court to retain jurisdiction, federal question or diversity jurisdiction must exist.

### A.     Federal Question Jurisdiction

A federal court has jurisdiction over "all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. Normally, a claim arises under federal law only if "a federal cause of action appears on the face [of] a well-pleaded complaint." Oglala Sioux Tribe v. C & W Enters., Inc., 487 F.3d 1129, 1131 (8th Cir. 2007) (citation omitted). Under limited circumstances, federal-question jurisdiction is present when the resolution of a state-law cause of action "depends upon the construction or application of [federal law]." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 313 (2005) (quoting Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 199 (1921)).

The "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 813 (1986); see Gully v. First Nat'l Bank, 299 U.S. 109, 115 (1936). Federal jurisdiction is proper only in those cases where "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that ... [a] claim is 'really' one of federal law." Franchise Tax

Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 13 (1983). Such circumstances are a "special and small category." Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 699 (2006).

Where, as here, a defendant alleges federal-question jurisdiction on the basis that state law implicates a substantial federal question, the court begins by examining whether the federal law creates a private right of action. See Merrell Dow, 478 U.S. at 817. Federal courts, in this district and others, have uniformly held that HAMP does not create a private right of action. See Nelson v. Bank of Am., N.A., No. 11-11091, 2011 WL 5138591, at *1 (11th Cir. Oct. 31, 2011) (per curiam) (citing cases); Cox v. Mortg. Elec. Registration Sys., Inc., 794 F. Supp. 2d 1060, 1064 (D. Minn. 2011) (citation omitted). Since the complaint merely references HAMP guidelines, and does not attempt to directly allege a federal HAMP cause of action, federal subject-matter jurisdiction is lacking.

Further, unlike in Grable, this case does not involve a question of whether a federal agency complied with a federal statute. In Grable, the federal question was substantial and its resolution was "both dispositive of the case and would be controlling in numerous other cases." Empire, 547 U.S. at 700 (quoting Grable, 545 U.S. at 313). Plaintiff alleges infringement of HAMP guidelines in violation of Minnesota Statutes § 58.13, but the claim does not involve a federal agency and would not be

5

controlling in numerous other cases due to the fact-intensive inquiry required by this court. There is no "nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous [similar cases]." Id. at 700 (internal quotation marks omitted). This court joins other courts in finding that state-law claims alleging violations of HAMP guidelines do not create federal-question jurisdiction. See Brown v. Wells Fargo Bank, N.A., No. 2:11cv309, 2011 WL 5593174, at *5 (E.D. Va. Nov. 15, 2011); Maxwell v. Aurora Loan Servs., LLC, No 4:11-CV-1264, 2011 WL 4014327, at *2 (E.D. Mo. Sept. 9, 2011); White v. Wells Fargo Home Mortg., No. 1:11-cv-408, 2011 WL 3666613, at *2 (M.D. Ala. Aug. 22, 2011); Ariz. ex rel. Horne v. Countrywide Fin. Corp., No. CV-11-131, 2011 WL 995963, at *4 (D. Ariz. March 21, 2011); Preciado v. Ocwen Loan Servicing, No. CV 11-1487, 2011 WL 977819, at *1 (C.D. Cal. March 18, 2011). Therefore, federal-question jurisdiction is lacking.

**B.   Diversity Jurisdiction**

Diversity jurisdiction under 28 U.S.C. § 1332 requires that the matter in controversy exceed $75,000, exclusive of interest and costs, and that complete diversity of citizenship exist between the parties.[2] If a complaint does not allege a specific damages amount, the removing party has the burden of establishing by a

---

[2] Gretsch concedes that the parties are completely diverse. See Pl.'s Mem. Supp. Remand 2.

preponderance of the evidence that the amount in controversy exceeds $75,000. See Rasmussen v. State Farm Mut. Auto. Ins. Co., 410 F.3d 1029, 1031 (8th Cir. 2005). Defendant's burden is "met by submitting proof that the plaintiff's verdict reasonably may well exceed the jurisdictional minimum, or if, on the face of the complaint, it is apparent that the claims are likely above that amount." Kaufman v. Costco Wholesale Corp., 581 F. Supp. 2d 1061, 1063 (D. Minn. 2008) (citations omitted). Jurisdiction is judged at the time of removal. See Schubert v. Auto Owners Ins. Co., 649 F.3d 817, 822 (8th Cir. 2011). In accordance with Minnesota Rule of Civil Procedure 8.01, Gretsch's complaint does not state a specific amount in controversy, but instead alleges damages in excess of $50,000.[3]

### 1. Injunctive Relief

The complaint asks the court to enjoin "Acqura from commencing actions to foreclose mortgages *in the future* before complying with HAMP Directives." Compl. ¶ 69 (emphasis added). Acqura argues that the value of such injunctive relief is the fair-market value

---

[3] Count I and II seek damages in excess of $50,000, while Count III seeks $40,000. See Compl. ¶¶ 70, 77, 85. Any violation under Count II for negligence arises from the same alleged conduct as a violation for breach of contract under Count III. It would be improper to allow two recoveries for the same loss, absent a showing of separate damages under each theory. See Brooks v. Doherty, Rumble & Butler, 481 N.W.2d 120, 128 (Minn. Ct. App. 1992); see also UFE Inc. v. Methode Elec., Inc., 808 F. Supp. 1407, 1415-16 (D. Minn. 1992) (citation omitted) (interpreting Minnesota law). Thus, Count II and III will be assessed together for purposes of the amount-in-controversy inquiry.

of the Property ($196,000). Gretsch argues, however, that the request for injunction pertains only to the putative class, and that it should not be counted for purposes of the amount-in-controversy inquiry. See Pl.'s Reply Mem. Supp. Remand 4-8; see also Dydra v. Wal-Mart Stores, Inc., 41 F. Supp. 2d 943, 949 (D. Minn. 1999) (allowing plaintiff to clarify, but not amend, amount-in-controversy pleading).

The complaint only requests the court to enjoin Acqura from commencing future foreclosure referrals. See Compl. ¶¶ 48, 63, 69. Such an interpretation is consistent with Acqura's role as a loan servicer; it can only refer the mortgage to foreclosure. As to Gretsch,[4] this request for relief is moot, because Acqura referred her mortgage to foreclosure in December 2010. A moot claim has no value.

### 2. Value of Property

Acqura next argues that because Gretsch seeks a loan modification, the amount in controversy is the fair-market value of the Property. There is no private right of action under HAMP, and the court cannot order a HAMP loan modification. See U.S. Dep't of Treasury, Supplemental Directive 09-01, Introduction of the Home Affordable Modification Program 24-25 (2009) (delegating HAMP compliance to Freddie Mac). Even if Minnesota Statutes § 58.13

---

[4] This request was brought on behalf of Gretsch and the putative class. See Compl. ¶ 60.

supports Gretsch's claims, the amount in controversy, specific to Gretsch, would be the value of the delay in foreclosure proceedings (i.e., temporary use and occupation) that should have occurred had Acqura assessed Gretsch's eligibility for a HAMP loan modification. Cf. Advance Am. Servicing of Ark. v. McGinnis, 526 F.3d 1170, 1173 (8th Cir. 2008) ("[V]alue is measured by focusing on the object of the particular litigation brought by the plaintiff." (citing Hunt v. Wash. State Apple Advert. Comm., 432 U.S. 333, 347 (1977)).

According to Supplemental HAMP directives, a homeowner requesting a loan modification is to receive notification of eligibility within thirty days. See U.S. Dep't of Treasury, Supplemental Directive 09-07, Home Affordable Modification Program-Streamlined Borrower Evaluation Process 7 (2009). Therefore, the court determines that the value of the loan modification request is Gretsch's use and enjoyment of her home during the thirty-day modification period.[5]

### 3. Statutory Damages and Fees

Acqura next argues that statutory penalties and attorney fees allowed under Minnesota Statutes §§ 58.13 and 58.18 exceed the jurisdictional amount. See Hartis v. Chi. Title Ins. Co., 656 F.3d

---

[5] The thirty-day period does not begin until a borrower has submitted a Request for Modification and Affidavit form (RMA). See U.S. Dep't of Treasury, Supplemental Directive 09-07, Home Affordable Modification Program-Streamlined Borrower Evaluation Process 7 (2009). By considering the value of this relief, the court does not suggest that the complaint states a cause of action.

778, 781 (8th Cir. 2009) (attorney fees); Peacock & Peacock, Inc. v. Stuyvesant Ins. Co., 332 F.2d 499, 502 (8th Cir. 1964) (statutory penalty). Under § 58.18, Gretsch is eligible for statutory damages equal to all lender fees ($7,684.17 claimed), all interest accruing on the loan from the date modification should have been granted, court costs, statutory attorney fees and punitive damages.[6]

Acqura argues that the interest damages total $36,000,[7] but it has not proven this amount by a preponderance of the evidence. Interest modifications are calculated according to a "standard modification waterfall" that reduces a borrower's monthly mortgage payment ratio to 31% of their gross-monthly income (Target Monthly Payment). See U.S. Dep't of Treasury, Supplemental Directive 09-01, Introduction of the Home Affordable Modification Program 8 (2009). The first step is to capitalize all "accrued interest, out-of-pocket escrow advances to third parties, and any required escrow advances that will be paid to third parties by the servicer." Id. at 9. If payments are still greater than the Target Monthly Payment, the interest rate for the loan is reduced in increments of 0.125%, until the Target Monthly Payment is

---

[6] Pursuant to Minnesota Statutes § 549.191, Gretsch did not plead a claim for punitive damages.

[7] Acqura calculated the value as the difference between interest accruing at 7.775% (Gretsch's interest rate) and the interest accruing at 2% over a two-year time span (hypothetical length of litigation).

reached, or until the interest rate reaches 2%.  Id.  If necessary, the "servicer [then] must provide for principal forbearance" to achieve the Target Monthly Payment.  Id.

Gretsch's income during the time she sought a loan modification is unknown.[8]  Without this information, the court cannot assess the total reduction in interest that Gretsch was eligible to receive.  Any calculation by the court would be speculative.  Acqura has not shown by a preponderance of the evidence that Gretsch, if she succeeded in her claim, would receive $36,000 in damages for interest payments.

Although the interest rate on Gretsch's loan likely would be reduced under a HAMP loan modification, the total amount is unknown at this time.  When adding lender fees, interest, court costs and statutory attorney fees under Count I, the $40,000 claimed in Count III and one month of reasonable use and enjoyment of the Property, the court is not persuaded by a preponderance of the evidence that the amount in controversy exceeds $75,000.  Therefore, the court lacks subject-matter jurisdiction, and remand of this action to state court is warranted.

---

[8] The complaint alleges income from "other sources." Compl. ¶ 43.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the plaintiff's motion to remand [ECF No. 6] is granted, and this action is remanded to the Minnesota District Court for the Fourth Judicial District.

Dated:  December 23, 2011

                                            s/David S. Doty<br>
                                            David S. Doty, Judge<br>
                                            United States District Court